## No. 9188.

### NOBLE ET AL. *v.* THE PEOPLE ET AL.

1. INTOXICATING LIQUORS—*Forfeiture of.* There is no authority in law for the destruction of intoxicating liquors found in possession of, and claimed by, a citizen, by judgment of forfeiture, without trial.

2. —— *Burden of Proof.* The people, seeking condemnation and destruction of intoxicating liquors, have the burden of showing that the liquors were kept for an unlawful purpose. Only where the evidence warrants a finding of all the facts necessary to constitute a forfeiture, is the property right in the liquors forfeited.

3. —— *Liquors Acquired before the Statute took Effect,* and stored in a private house, having no connection with, or used as, a store, shop, hotel, boarding house, rooming house, or place of public resort, are not, in view of the exceptions contained in the statute, to be regarded as kept for an unlawful purpose, merely by reason of the excessive amount or quantity thereof.

4. PLEADINGS—*Motion for Judgment Upon.* Proceeding to condemn and destroy intoxicating liquors. The defendant pleaded purchase before the taking effect of the prohibitory act (Laws 1915, c. 98), for their personal use, and that they stored the liquors in the private residence of one of them, no part of which was connected with or used as a store, shop, hotel, boarding house, rooming house, or place of public resort. Motion for judgment on the pleadings admits these allegations and the allowance of the motion was held error.

The purpose of the action being to secure the condemnation and destruction of certain intoxicating liquors, two citizens claiming the liquors were named as defendants. Although the only judgment prayed was the destruction of the liquors, the case was tried as an action of replevin. The court says that if again tried as an action of replevin, without reforming the pleadings, the individual claimants of the liquors should be treated as plaintiffs; that if the evidence should warrant a

finding of fact that the property in the liquors had been forfeited under the statute there could be no recovery by the individual claimants, because in the case supposed, they would have no title or right of possession, and they recover only upon the strength of their own title; that if the liquors were shown to be placed in the private residence of one of the defendants before the prohibitory statute went into effect, and there remained, and that the house was within the exception mentioned in the statute, the quantity of liquor would be no evidence of violation of the statute; and finally that although the package was not marked as containing intoxicating liquor, while being removed by one of the claimants from the place of deposit to his own private residence, this would not work a forfeiture.

*Error to Adams District Court, Hon. J. C. Wiley, Judge.*

Mr. F. T. JOHNSON, Mr. S. H. JOHNSON, for plaintiffs in error.

Mr. SAMUEL W. JOHNSON, District Attorney, and Mr. CHARLES E. FRIEND, for defendants in error.

THIS action was brought in the District Court of Adams County to defeat any property right in, and to destroy, certain intoxicating liquors seized by and now in the possession of plaintiff below, and is based upon the intoxicating liquor act of 1915.

Some time prior to January 1, 1916, and before the prohibition act went into effect, William Noble, who resided in Denver, took 122 pint bottles of whiskey, and 23 cases each containing 24 pints of whiskey, belonging to him, to the residence of Al Duncan, in Adams County, and placed the liquor in a room in the house where Duncan lived. There is no proof or admission that any part of Duncan's residence was in connection with or used as a store, shop, hotel, boarding house, rooming house or place of public resort. Duncan owned 4 barrels of whiskey which he placed in the same room prior to January 1, 1916.

May 16, 1916, Noble drove with a horse and buggy from his residence in Denver to Duncan's place, and took from the room the 122 bottles of whiskey, which he placed in his buggy, with the intention of taking it to his residence in

Denver. There is no evidence as to how the whiskey was packed, or that it was packed, except that it was in pint bottles, and the package was not labeled, "This package contains intoxicating liquor." While traveling on the highway in Adams County, going to Denver, he was met by the sheriff, who arrested him, searched the buggy, and took therefrom the whiskey, and deposited Noble and the liquor in the County Jail at Brighton, without writ or search warrant, or any legal proceedings. The next day, May 17th, the sheriff, armed with a purported search warrant from a justice of the peace, which it is claimed was void, searched the Duncan residence, and found the 4 barrels of whiskey, and the 23 cases, and took the liquor to Brighton, and deposited it in jail as illegal liquor. No return was made on the search warrant, and no further proceedings were had, regarding the liquor seized at the Duncan ranch, before the justice who issued the warrant.

The next day after searching Noble's buggy, the sheriff filed two criminal complaints against him in the County Court, one charging him with unlawfully selling and keeping for sale the liquor taken from the buggy, and the other charging him with carrying it from one point to another in the state without the package being marked, "This package contains intoxicating liquor." Upon the former charge Noble was tried by a jury and acquitted, but upon the latter he was convicted June 24, 1916, and the court fined him $100.00 and costs, which he paid, and was discharged. No further or other court proceedings were had, and no court orders were entered in the Justice Court, or in the County Court, or elsewhere, regarding the liquor. All the liquor taken remained in the sheriff's custody, without any steps being taken to destroy it until September 1, 1916, when the District Attorney filed a complaint against the liquor in the District Court at Brighton in a proceeding entitled, "The People of the State of Colorado, Plaintiff, v. Al Duncan and William Noble, Defendants." The complaint charges *inter alia* that the liquors were in the possession of

and kept by Duncan and Noble for unlawful sale; that the 122 bottles were taken from Noble's buggy when they were being transported by him from one point to another within the state, without the package being labeled, "This package contains intoxicating liquor." It asks for a finding that the liquors are unlawful, because they were kept by defendants for sale; and for a final judgment that defendants have no property rights in the liquors, and that the sheriff be directed to destroy the same.

An ordinary code summons was issued, stating that the action was brought to defeat any property right defendants had in the liquors, and to destroy the same. Copy of this summons and complaint was served on Duncan, but Noble was never served. Duncan answered September 28th, and admitted the sheriff seized and took all the liquor, except the 122 bottles, from his private residence, on his farm, in Adams County, and denied all the other allegations. In what he calls a second defense and counter-claim he alleges that he owns the 4 barrels of whiskey; that, before the prohibition act went into effect, he stored and kept it in the room in his private residence, for his own private use, and not for sale, no part of which is in connection with or used as a store, shop, hotel, boarding house, rooming house or place of public resort; that the sheriff seized and took the liquor from this room in his private residence; that the value of the liquor is $600.00; and he prays that the liquor be not destroyed, but returned to him.

January 4, 1917, Duncan filed a motion to dismiss the case on account of the procedure adopted, claiming that sections 11, 12 and 13 of the act should have been followed, instead of the procedure adopted. This motion was argued and overruled, and by stipulation in open court, the sheriff was made a party plaintiff. The case against Duncan and the liquor claimed by him went to trial before a jury, and January 6th it returned into court the following verdict:

"We, the jury, duly impaneled and sworn to try the issues herein joined between plaintiffs and defendant Duncan, find the issues for the defendant Duncan."

January 10th plaintiffs filed a motion praying the court, notwithstanding the verdict, to enter judgment against Duncan on the pleadings, or to grant plaintiffs a new trial. February 15th, after argument, the court granted plaintiffs a new trial.   On the 17th, after still further argument on the motion, the court sustained plaintiffs' motion for judgment on the pleadings.   Plaintiffs then filed the following motion:

"Come now the plaintiffs and move the court to enter an order herein, commanding and directing the sheriff of Adams County to forthwith destroy the liquors described in the complaint herein, for the reason the pleadings herein show that the defendants, nor either of them, have any property rights of any kind whatsoever in the liquors, or any part thereof."

Noble then filed a motion, supported by his affidavit, to the effect that he owned the 122 bottles and 23 cases of liquor; that he purchased it for his own private or personal use, and not for sale, before the prohibition law went into effect, and conveyed it to the Duncan ranch and stored it in this room in Duncan's private residence; that it was not imported into the state after the act went into effect, nor placed in packages for shipment, nor shipped to him or any one, for any purpose thereafter; that, while he was taking the 122 bottles to his residence in Denver, the sheriff of Adams County suddenly came upon him in the highway, arrested him, and took possession of the liquor, and conveyed and deposited him and the liquor in the County Jail, without a warrant; that the next day the sheriff filed against him a criminal complaint in the County Court, in which he charged him with unlawfully selling and keeping for sale the liquor, and filed another complaint against him, in which he charged that he unlawfully carried the liquor from one point to another within the state without the package being labeled, "This package contains intoxicating liquor"; that criminal informations were filed against him on these complaints, and June 3, 1916, he was acquitted by

a jury on the first charge, but convicted on the second and fined $100.00 and costs, which he paid, and was finally discharged, but that the liquor was not condemned, nor was it delivered to him, but was kept by the sheriff; that the court made no order whatever regarding the liquor; that the law, under the circumstances, did not require the package to be marked, "This package contains intoxicating liquor"; that it is of the value of $50.00, and that he desires it returned without further delay or litigation. Regarding the 23 cases, he says that the search warrant issued by the justice was void, and the sheriff made no return thereon, and nothing was ever done with that liquor except to keep it; that it is worth $250.00, and he wants it returned; that none of the liquor is held by the sheriff for the purpose of evidence, and that no case is now pending against any person regarding the liquor, nor against the liquor, except the present proceeding; that none of the liquor was imported into the state after the prohibition act of 1915 went into effect, and none of it was ever placed in packages for shipment, or shipped, after the prohibition act went into effect; and that all of it is his property, and was kept for his private and personal use, and not for sale.

The court overruled Noble's motion and sustained plaintiff's motion to destroy the liquor. Duncan and Noble each filed separate motions for a new trial, which were overruled, and February 17, 1917, the court entered the following judgment:

"It is, therefore, ordered, adjudged and decreed by the court, that the liquors described in the complaint herein are unlawful, and the Sheriff of Adams County is hereby directed and ordered to forthwith destroy the said liquors and the vessels in which said liquors are contained and make due return thereof to this court and the plaintiffs recover their costs."

It is claimed that the court erred in sustaining plaintiffs' motion and entering judgment on the pleadings; that the ruling of the court in ordering the liquor destroyed in the

face of defendants' pleadings is arbitrary and in disregard of defendants' rights, and that the method of procedure adopted by plaintiffs is unwarranted by the prohibition statute of 1915; and that the court was without jurisdiction in the premises.

The applicable sections of the statute may be summarized as follows:

Sec. 1.  No person shall, within this state, manufacture for sale or gift any intoxicating liquors. No person shall import into this state any intoxicating liquors for sale or gift. No person shall, within this state, sell or keep for sale any intoxicating liquors, or offer any intoxicating liquors for sale, barter or trade.

Sec. 7.  Provides it shall be unlawful for carriers to carry liquor into the state, or from one point to another within the state, for the purpose of delivering it to any person, or to deliver it to any person for any purpose prohibited by the statute. The carrier shall, within three days after the first of each month, file with the County Clerk of the county where the liquor is delivered to the consignee, and with the Secretary of State, a statement covering the preceding month, setting forth the date of delivery, name and post-office address of each consignee and each consignor, the place of delivery, and the person to whom it is delivered, and pay the County Clerk a fee of 25 cents for each shipment so delivered.

Sec. 8.  Makes it unlawful for the carrier to deliver any liquor to any person other than the consignee, or to the consignee, until he first pays a fee of 25 cents and executes an affidavit giving his true name and postoffice address, and stating that he is the consignee named in the shipment to whom the package containing the liquor is addressed, and that the liquor so consigned to him is for his personal use, or for mechanical or sacramental purposes. The person delivering the liquor may administer the oath to the consignee when he receives the package. The delivering agency must keep the affidavit open to public inspection for two years.

Sec. 9.    Makes it unlawful for any person to open the original package while in transit, and until delivery to the consignee, or for the carrier to allow the original package in which the liquor is being shipped to be opened or divided, while the same is upon the premises or in the possession of the carrier.

Sec. 10.    Makes it unlawful for any person or carrier to ship, or knowingly carry, to any point in the state, or from one point to another within the state, any liquor, without marking conspicuously on the package containing the liquor being shipped these words:    "This Package Contains Intoxicating Liquor."

Sec. 11.    Provides, if any person makes an affidavit before a court that he has reason to believe that liquors are being sold or kept for prohibited purposes, describing the premises or place to be searched, the court or judge shall issue a search warrant, in the form set forth in the statute, directed to such officer as the person making the affidavit shall designate, commanding him to search the premises or place.

Sec. 12.    Makes it the duty of the officer executing the warrant, if intoxicating liquors are there found, to seize and safely keep the same, and make immediate return on the warrant to the court that issued it, and to forthwith file a criminal complaint in the court issuing the warrant, charging the person with such violation of law as the evidence in the case justifies.    The liquor must be held by the officer seizing it, subject to the order of the court that issued the warrant, as evidence in the prosecution of the criminal case against the person charged with violating the law, and can not be taken from the custody of the officer by replevin, or other processes, while such criminal proceedings are pending, and a final judgment of conviction against the person charged shall be a bar to any suit for the recovery of the liquor seized, or its value, or for damages by reason of the seizure or detention thereof, and judgment in such a case shall be entered, finding the liquors unlawful and

directing the destruction thereof by the officer. If the officer finds no person in possession of the premises where the illegal liquors are found, he must post in a conspicuous place on the premises a copy of the warrant, and if, at the time fixed for the hearing, or 30 days thereafter, no person appears, the court shall order the liquor destroyed. No warrant shall issue to search a place occupied as a private residence unless it, or some part of it, is used in connection with or as a store, shop, hotel, boarding house, rooming house or place of public resort.

Sec. 13. Provides, any officer having personal knowledge or reasonable information that intoxicating liquors are kept in violation of law in any place, except a private residence, as in section 12 provided, shall search the suspected place without a warrant, and without any affidavit being filed, and, if he finds upon the premises intoxicating liquors, he shall seize the same, and arrest the person in charge of the place, and shall take him, with the liquors so seized, forthwith before a justice of the peace or judge having jurisdiction to try cases for a violation of the act, and shall, without delay, make and file such a criminal complaint as the evidence justifies against the person arrested.

Sec. 20. Provides there shall be no property rights of any kind whatsoever in any liquors kept or used for the purpose of violating any provision of the act.

Sec. 21. Provides, that in all prosecutions against any person for violating the act, the finding of an unusual amount of intoxicating liquor in the possession of any one not authorized under the act to sell it, except when found in a private residence, no part of which is in connection with or used as a store, shop, hotel, boarding house, rooming house, or place of public resort, shall be *prima facie* evidence of the violation by the person of the applicable section or sections.

Sec. 22. Provides, if any person shall violate any of the provisions of the act, he shall, for the first offense, be deemed guilty of a misdemeanor, and, for every subsequent

offense, of a felony, and in each case shall be punished upon conviction in the manner provided by the statute.

Sec. 25. Provides, that Justices of the Peace and County Courts shall have jurisdiction over all violations of the act which are declared to be misdemeanors, and that the District Court shall have jurisdiction over all violations of the act.

Garrigues, J., after stating the case as above:

This proceeding was brought originally under the Prohibition Act, S. L. 1915, p. 275, against certain intoxicating liquors, the avowed purpose being to defeat any property rights therein, and to obtain a rule of court ordering them destroyed. Duncan and Noble were made defendants because they claimed to own the liquor that was taken from their possession. The prohibition act, which took effect January 1, 1916, is controlling.

Designating the parties, as in the court below, plaintiffs and defendants, plaintiffs claim the liquor was kept for sale, and they ask to have the property rights therein declared forfeited, and have it destroyed under a court order. Plaintiffs also contend, though the proceeding is to declare a forfeiture, that no action, suit or legal proceeding is necessary to work a forfeiture; that the statute itself works a forfeiture immediately upon the happening of the event. The rule of forfeiture contended for no doubt is true, but how shall it be known that the event happened, or that forfeiture has occurred unless the acts occasioning the forfeiture appear in court, or in some legal manner or proceeding.

In *McConathy v. Deck*, 34 Colo. 461, 466, 83 Pac. 135, 4 L. R. A. (N. S.) 358, 7 Ann. Cas. 896, and the many citations and quotations therein, the principle is announced that forfeiture takes place immediately, under the statute, without any proceeding to declare a forfeiture, upon the happening of the event; still, in all forfeiture cases that we have been able to examine, the facts constituting the forfeiture were made to appear in court, before the forfeiture

could be pronounced or made effectual. The owner of the property must be afforded the means of demanding and enforcing his constitutional right to defend and protect his property against forfeiture. In all cases where the rule has been announced, it has been in court, where the owner had the opportunity to defend his property rights. If we concede section 20 of the statute warrants such a proceeding, the property rights of defendants could only be defeated by proof, on the trial, of facts constituting a forfeiture. A forfeiture, under the circumstances, could not be declared upon default without any evidence.

Plaintiffs claim they were not obliged to make a *prima facie case*, or to introduce any evidence of forfeiture in the first instance, because defendants, by their pleadings, made a *prima facie* case for plaintiffs, entitling them to judgment on the pleadings, but this contention is untenable. Noble's affidavit treated as a pleading put in issue the alleged facts, it set out his version of the transaction, the effect of which was a denial. Duncan's answer was a denial except he admitted the liquor belonged to him, and that it was seized and taken from his possession. The cross-complaint set out his account of the transaction, and amounts, like Noble's affidavit, to a denial. It added nothing and was superfluous—because he styled it a cross-complaint is of no consequence. Both Duncan and Noble attacked the form of procedure, and denied the alleged facts which it is claimed forfeited the property rights. No proof was offered, and defendants were given no opportunity to defend whatever property right they had in the liquor. To destroy property taken from the possession of defendants, and which they claim to own, by pronouncing judgment for forfeiture on the pleadings without evidence, was without authority of law.

It was not an adversary proceeding, and possibly pleadings on behalf of defendants were unnecessary, but they were permitted to plead they purchased the liquor before the state went dry, and stored it in a room in Duncan's pri-

vate residence, no part of which was connected with, or used as a store, shop, hotel, boarding house, rooming house, or place of public resort, for their own personal and private use. The motion for judgment on the pleadings admitted the truth of these allegations. If true, it came within the exception mentioned in the statute, and the amount seized, was not, on account of the exception, *prima facie* evidence of a violation of the statute. The burden was upon plaintiffs to show by evidence on the trial that the liquor was kept for unlawful purposes, and judgment on the pleadings was wrong.

For this reason the case will be reversed and remanded.

2. The proceeding, as originally brought, is an action *in rem* against certain liquors, but it seems the court below and the parties at the trial treated and tried it as a replevin suit. We express no opinion as to the propriety of such a course. If the case is re-tried, it will be open for the parties and the court to make up and try the issue as they may be advised. But, in view of such an event, we feel we should express an opinion on certain points that may arise, to aid the court in the future trial of the case.

If it is tried as it was brought, and the evidence warrants the finding that defendants have no property rights therein, on account of forfeiture under the statute, then, whether the seizure of the liquor was legal or illegal, or what plaintiffs did with it thereafter, or what the court orders done with it, is of no concern to defendants, because they have no property rights therein. But it is only in the event that the evidence warrants a finding that the facts necessary to constitute a forfeiture are true, that the property rights in the liquor are forfeited. Therefore, on the trial of this issue, plaintiffs have the burden of proving from all the evidence in the case the allegations of forfeiture. If defendants' property rights are forfeited, then they have no further interest in the liquor, and all other questions, except forfeiture, are immaterial.

If the case is converted into and tried as a replevin suit without reforming the pleadings, then Duncan and Noble should be treated as plaintiffs, and Duncan's answer and Noble's affidavit should be treated as complaints in replevin. Plaintiffs, in that event, should be treated as defendants, and the complaint should be treated as an answer in replevin, and the parties would be entitled to a jury trial as in any replevin suit. In the trial of such an issue, if the whole evidence warrants a finding of fact that plaintiffs' property rights have been forfeited by the statute, they cannot recover in replevin because they have no title and right of possession; they must recover upon the strength of their own title and not upon the weakness of defendants' title. The defense of forfeiture of title raised in such a case would be a good defense in replevin.

If the evidence on the trial shows the liquor was placed in a room in Duncan's private residence (prior to the time the act went into effect, and was there when it went into effect) no part of which was in connection with or used as a store, shop, hotel, boarding house, rooming house or place of public resort, then, on account of the exception mentioned in the statute, it cannot be said that the amount was *prima facie* evidence under the statute that it was kept or used for the purpose of violating the statute.

Because Noble did not have the 122 bottles of liquor taken from his buggy labeled— "This package contains intoxicating liquor"—did not, under the circumstances of this case, work a forfeiture under the statute of whatever title he had in the liquor.

*Reversed.*

Decision *en banc.*

Mr. Justice Bailey not participating.

Mr. Justice Teller and Mr. Justice Allen agree in the conclusion of reversal only.